UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHEN M. HYNES,

           Plaintiff,  18-cv-466-FPG
v.               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## INTRODUCTION

Plaintiff, Stephen M. Hynes, brought this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 19, 26. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 19) is granted, the Commissioner's motion (ECF No. 26) is denied, and the matter is remanded to the Commissioner for further proceedings.

## BACKGROUND

On July 16, 2014, plaintiff filed an application for supplemental security income benefits alleging disability beginning on February 1, 2012. Administrative Record ("AR.") at 177-78. Plaintiff later amended his onset date to July 16, 2014. AR. at 250. After the application was denied, he timely requested a hearing. AR. at 88-90.

On January 24, 2017, plaintiff appeared via videoconference with his attorney, Lewis Schwartz, Esq., and testified at a hearing before Administrative Law Judge, Julia D. Gibbs ("the ALJ"). AR. at 38-69. A Vocational Expert ("VE"), Ms. Connor, also testified at the hearing. AR.

1

at 59-67. The ALJ issued an unfavorable decision on February 10, 2017. AR. at 20-33. Plaintiff then timely requested review by the Appeals Council, which the Council denied on February 13, 2018, making the ALJ's decision the final decision of the Commissioner. AR. at 1-3. Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

2

gainful work activity. *See* 20 C.F.R. § 404.1520(b).[1] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

---

[1] Because the DIB and SSI regulations mirror each other, the Court only cited the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2012. AR. at 22. At step two, the ALJ found that plaintiff suffered from several severe impairments: multiple sclerosis ("MS"), degenerative disc disease, peripheral neuropathy, depression, and mood disorder. *Id.* At step three of the analysis, the ALJ found that the severity of plaintiff's impairments did not meet or equal the criteria of any listing. AR. at 23-24. The ALJ then determined that prior to July 1, 2016, plaintiff retained the residual functioning capacity ("RFC") to perform light unskilled work with several limitations. Specifically, the ALJ found that such work could be performed either sitting or standing, and would not require more than frequent use of the hands, or an interaction with the public, coworkers and supervisors that is more than superficial in nature. AR. at 24. The ALJ further determined that after July 1, 2016, plaintiff had the RFC to perform sedentary work, except that plaintiff would be allowed to take a total of two hours of unscheduled breaks, work not more than a total of six hours a day, and occasionally use his hands. AR. at 30. At step four, the ALJ found that plaintiff did not have past relevant work. *Id.* The ALJ then proceeded to step five, where she determined that there were jobs in the national economy that a person of plaintiff's age, education and work experience could perform. AR. at 31. Specifically, the ALJ determined that prior to July 1, 2016, plaintiff could work as a small parts assembler, electronics worker, and laundry folder. *Id.* She has also determined that beginning on July 1, 2016, there were no jobs in the national economy that an individual of plaintiff's age, education and work experience could

4

perform. AR. at 32. Based on the testimony of the VE, and considering plaintiff's age and education, the ALJ found plaintiff to be disabled as of July 1, 2016.

**II. Analysis**

Because the ALJ has found plaintiff disabled as of July 1, 2016, the gist of plaintiff's argument relates to his allegations of disability prior to July 1, 2016. Plaintiff submits that the ALJ used her lay opinion in formulating his RFC by failing to seek clarification from plaintiff's treating providers about limiting effects of leukocytosis, lumbar degenerative disc disease, MS, and peripheral neuropathy that plaintiff had been diagnosed with prior to July 1, 2016, all of which the ALJ found to be severe. ECF No. 19-1 at 18, 20. Plaintiff also argues that the ALJ failed to account for his frequent and chronic fatigue, headaches, pain, numbness and muscle weakness in her RFC determination, which, he argues, could reasonably lead to off-task time and missed workdays, and as a result, to a finding of disability. *Id.* at 22, 26. The Commissioner objects on the basis that the ALJ properly afforded weight to plaintiff's treating neurologist, who determined that plaintiff's MS did not exacerbate until after July 1, 2016, which, the Commissioner argues, defeats plaintiff's argument for greater limitations for the time period prior to July 1, 2016. ECF No. 26-1 at 16. The Court is not persuaded with the Commissioner's argument.

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and claimant's subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis. 20 C.F.R. §§ 404.1545(a)-(e); *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984). An ALJ is required to consider medical opinions for his RFC assessment because they reflect judgments about the nature and severity of the claimant's impairments, and explain what the claimant can still do despite those impairments. 20 C.F.R. §

5

404.1527 (a); *see also Lowe v. Colvin*, No. 6:15-cv-06077(MAT), 2016 WL 624922, at *5 (W.D.N.Y. Feb. 17, 2016) ("RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision.") (citations omitted). "Even though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018) (citation omitted); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citing *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him."); *Goble v. Colvin*, 15-CV-6302 CJS, 2016 WL 3179901, *6 (W.D.N.Y. June 8, 2016) ("the ALJ is not free to form his own medical opinion based on the raw medical evidence") (citations omitted). While the regulations recognize that in certain circumstances an ALJ may form the RFC by making determinations about claimant's functional capacity without relying on an opinion of a medical professional, *see Dougherty-Noteboom v. Berryhill*, 17-CV-00243-HBS, 2018 WL 3866671, *10 (W.D.N.Y. Aug. 15, 2018) ("[T]he regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion."), this exception, only arises "when the medical evidence shows only minor physical impairments." *Perkins*, 2018 WL 3372964, at *3. In circumstances where the ALJ does not rely on a medical opinion to formulate the RFC and renders a common sense judgment about claimant's functional capacity, the ALJ must provide a function-by-function analysis of the

claimant's work-related abilities. *Id.*; *see also Judd v. Berryhill*, No. 17-CV-1188, 2018 WL 6321391, *8 (W.D.N.Y. Dec. 4, 2018) (the ALJ was required to assess plaintiff's limitation on a function-by-function basis when he rejected the only medical source statement contained in the record). *But see Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis, though "[r]emand may be appropriate ... where other inadequacies in the ALJ's analysis frustrate meaningful [judicial] review") (citation omitted).

In the present case, plaintiff applied for disability based on MS, herniated disc in his back and neck, depression, anxiety, and asthma. AR. at 193. At the hearing, plaintiff testified that he mainly sought disability based on MS and the limitations associated with it such as mobility in his left leg and left arm, headaches, and problems with balance and vision. AR. at 43, 54, 58.

The ALJ's consideration of plaintiff's MS and degenerative disc disease in her RFC is what this Court is most concerned with. In formulating plaintiff's RFC, she considered opinions of the agency consultative examiners, Dr. Schwab and Dr. Santapia, as well as medical opinion of plaintiff's treating neurologist, Dr. Kolb. AR. at 26-29. The ALJ afforded limited weight to opinion of Dr. Schwab, who determined that plaintiff had mild restrictions for bending, lifting and carrying because it was inconsistent with treatment records, which showed that plaintiff had a greater degree of limitations. AR. at 26. The ALJ afforded great weight to Dr. Kolb's January 2017 opinion and her observations of the impact of plaintiff's ataxia, muscle weakness, chronic fatigue, pain, headaches, incoordination onto his functioning, but assigned limited weight to Dr. Kolb's findings regarding plaintiff's manipulative limitations. AR. at 28. It is undisputed that Dr. Kolb was the only neurologist who treated plaintiff for MS approximately every three months

7

since at least 2010.[2] AR. at 572. While plaintiff's other medical providers, such as Dr. Castiglia and Dr. Sharma, have also diagnosed him with MS during their treatment of plaintiff's other conditions, Dr. Kolb was the only treating source who provided a comprehensive medical opinion regarding plaintiff's level of functioning that the ALJ relied upon. AR. at 28, 572-75. This opinion described plaintiff's MS symptoms and limitations associated with it that he experienced since July 2016, and contained Dr. Kolb's conclusions regarding the effect of MS on plaintiff's functioning and his work-related abilities if he were to be placed in a competitive work setting. AR. at 572-75. Importantly, Dr. Kolb identified chronic fatigue, balance problems, paresthesias,[3] weakness, blurred vision, difficulty remembering, pain, poor coordination, numbness, ataxia,[4] and headaches as symptoms of plaintiff's MS, and opined that these symptoms would force him to take unscheduled multiple breaks of 20-30 minutes in duration during a workday. AR. at 572-74. She also opined that, if employed, plaintiff would be "off task" for more than 25 percent of the time and that plaintiff's impairments would likely produce "good" and "bad" days causing him to be absent from work more than four days per month. AR. at 575. Because Dr. Kolb noted that exacerbation of plaintiff's MS dated back to July 2016, the ALJ ultimately found him disabled beginning July 1, 2016.[5]

---

[2] Plaintiff testified that he was originally diagnosed with MS in December of 2009 by Dent Neurological. AR. at 46. It is also undisputed that plaintiff temporarily lost insurance coverage in March 2016 and was not treated by any of this medical providers until January 2017. AR at 48.

[3] Abnormal sensation such as tingling, prickling, burning, itching, numb, or "skin crawling." https://www.webmd.com/brain/paresthesia-facts.

[4] Impaired coordination, https://www.mayoclinic.org/diseases-conditions/ataxia/symptoms-causes/syc-20355652.

[5] The ALJ determined that on July 1, 2016, plaintiff was capable of sedentary work for not more than six hours a day, provided that he would be allowed to take a total of two hours of unscheduled breaks and use his hands occasionally. AR. at 30. Then, considering the VE's testimony about the lack of jobs available in the national economy for an individual who would be required to take unscheduled breaks for two hours, the ALJ found plaintiff "disabled" as of July 1, 2016. AR. at 32.

8

What is remarkable here is how the ALJ, while relying on Dr. Kolb's conclusions about plaintiff's MS beginning on July 1, 2016, determined his RFC prior to July 1, 2016 without relying on any opinion of either Dr. Kolb or any other plaintiff's treating physicians. What is also significant is that the record here is replete with treatment notes by Dr. Kolb and other treating providers, who identified the same MS symptoms that Dr. Kolb listed in her January 2017 opinion, which demonstrated plaintiff's continuous struggle with MS prior to July 2016. Specifically, as early as April 30, 2013, both Dr. Kolb and Dr. Castiglia consistently noted plaintiff's complaints of excessive fatigue; severe back, neck and joint pain; muscle pain and cramps; numbness; muscle weakness; severe pain throughout his limbs; weakness of the upper and lower left extremities; tension type headaches; abnormal gait and limp; foot drop; constant throbbing pain in his legs, and heat/cold intolerance. AR. at 337, 349, 361, 372, 374, 380, 382, 391-92, 434, 443-44, 446, 451, 511, 513, 514-16, 520-21, 523, 525, 528, 530. Despite this evidence, the record lacks a medical opinion from either of these providers as to how these significant MS symptoms affected plaintiff's ability to work prior to July 1, 2016. This is concerning because such an opinion regarding plaintiff's limitations in light of his MS diagnosis could be dispositive as to disability given the language of Listing 11.09. *See* 20 C.F.R. pt. 404, Subpart P, App.1 §§ 11.09A-C.

Even though the ALJ acknowledged some of these conditions when discussing Dr. Kolb's treatment, she, nonetheless, determined that plaintiff's MS did not rise to the level of severity that would preclude full-time light work while alternating between sitting and standing, and frequently using his hands. AR. at 24-25. Since "MS is an incurable, progressive disease subject to periods of remission and exacerbation[,]" *see Beck v. Colvin*, No. 6:12-CV-06495(MAT), 2013 WL 5533571, at *7 (W.D.N.Y. Oct. 7, 2013)(internal citation omitted), Dr. Kolb's medical opinion as to plaintiff's limitation prior to July 1, 2016 was particularly important. Additionally, treatment

9

records of Dr. Kolb and Dr. Castiglia, as well as MRI reports available as part of the record, contained bare medical findings and did not address how these disabling symptoms affected plaintiff's ability to work prior to July 1, 2016. Also, because some of plaintiff's symptoms, such as fatigue for instance, may not manifest itself in objective clinical findings, it was imperative for the ALJ to seek Dr. Kolb's opinion as to its effect of plaintiff's ability to work before arriving as the RFC. *See Theresa S. v. Berryhill*, No. 2:17-cv-00122, 2019 WL 1434461, at *14 (D. Vt. Apr. 1, 2019) ("[A] treating physician may consider a patient's subjective complaints in rendering diagnoses and affirming opinions regarding the patient's functionality especially with regard to complaints of pain and fatigue which may not manifest themselves in objective clinical findings.")

Also, in light of Dr. Kolb's January 2017 report in which she determined that plaintiff's muscle weakness, chronic fatigue, headaches, pain, parenthesias, and numbness would cause plaintiff to take multiple unscheduled breaks during a workday and take more than four days off per month, the ALJ was required to seek clarification from Dr. Kolb about the effect of the same symptoms on plaintiff's work abilities prior to July 1, 2016. The ALJ's failure to do so was particularly harming because of the testimony given by the VE, who opined that an individual of plaintiff's age, education and work experience would be precluded from competitive work if he were to take unscheduled breaks of 20-30 minutes in duration four times a day or be absent more than one workday per month. AR. at 66. *See Baez v. Comm'r of Soc. Sec.*, 17-CV-3595(MKB), 2018 WL 4688951, at *8 n.5 (E.D.N.Y. Sep't. 28, 2018) ("[A] medical opinion stating that a social security claimant likely may miss work multiple times per month is probative of the claimant's RFC and determining whether the claimant is disabled under the Social Security Regulations."); *Beck*, 2013 WL 5533571, at *6 ("Vocational experts in Social Security cases have testified that

missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance.").

As to plaintiff's multi-level degenerative disc disease, the ALJ, similarly, did not seek a medical opinion from Dr. Castiglia, who treated plaintiff since August 2013. AR. at 507-32). Even though the ALJ acknowledged the existence of disc herniation, decreased muscle strength, peripheral neuropathy, as well as diagnoses of lumbar and cervical degenerative disc diseases in her decision, it is not clear what work-related limitations these diagnoses might have on plaintiff and how they might be accommodated by the existing RFC.[6] Therefore, the ALJ substituted her lay opinion for an opinion of a medical professional when she formulated plaintiff's RFC for that time period. *See Wells v. Colvin*, No. 1:13-CV-00776 (MAT), 2015 WL 6829711, *2 (W.D.N.Y. Nov. 6, 2015) ("[t]he ALJ's evaluation of plaintiff's RFC consisted solely of his interpretation of the bare medical findings in the record[.] . . . The ALJ was unqualified to interpret these findings, and his decision to do so rather than obtain a medical opinion regarding resulting functional limitations, if any, constituted reversible error."); *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015) ("[t]he ALJ erred in his physical RFC assessment because he rejected all of the medical opinions of record pertaining to [plaintiff's] physical capabilities, leaving his assessment unsupported by any medical opinion").

Since the ALJ did not use a medical opinion to formulate plaintiff's RFC prior to July 1, 2016, she was required to provide a function-by function analysis of plaintiff's work-related capacity and explain how the evidence in the record support her RFC finding. *Perkins*, 2018 WL 3372964, at *4. Instead, the ALJ simply summarized Dr. Kolb and Dr. Castiglia's treatment notes

---

[6] Consultative examiner Dr. Schwab also provided an opinion about plaintiff's physical limitations after having seen plaintiff only once on November 2, 2014. AR. at 423-29. The ALJ afforded his opinion limited weight as it was inconsistent with the other evidence in the record. AR. at 26. The Court agrees.

11

and failed to relate the medical evidence to the physical functional demands of light work.[7] Moreover, even though the ALJ noted that she had considered plaintiff's visual problems, headaches, and foot drop in the context of plaintiff's MS in her RFC (AR. at 27), it is not clear how she interpreted these symptoms, and why she rejected other significant MS symptoms such as chronic fatigue, neuropathy, impaired coordination, ataxia, balance problems, numbness, and muscle pain in her analysis. The ALJ's discussion of the evidence is simply silent as to how these symptoms are accommodated by limiting plaintiff to light work with alternating between sitting and standing, and allowing for frequent fingering and handling.

Without a discussion that relates the medical evidence to the requirements of light work or any reliance on a medical source's opinion, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. Accordingly, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence and that remand is required. In light of that, the Court will not reach the remaining arguments raised by plaintiff. *Bonet ex rel. T.B. v. Colvin*, No.1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). On remand, the ALJ should obtain medical opinions from plaintiff's treating providers that would discuss how plaintiff's MS affected his ability to work prior to July 1, 2016, as well as

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

the impact of his MS symptoms on his ability to be off task or miss workdays. *Reid v. Berryhill*, 18-cv-255(LTS)(RWL), 2018 WL 8545835, at *14 (S.D.N.Y. Dec. 20, 2018), *report and recommendation adopted*, No. 18 CV 255-LTS-RWL, 2019 WL 1284275 (S.D.N.Y. Mar. 20, 2019) (on remand the ALJ was required to consider findings regarding plaintiff's likely absences and time off-task).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (ECF No. 19) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 26) is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: December 19, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court